### RIGGS *v*. THE STATE, 26 Miss. Rep., 51.

### HOMICIDE.

All the facts and circumstances which constitute a criminal offense must be stated with precision and certainty in the indictment. And every material circumstance in regard to time and place must be averred with sufficient certainty to exclude every other intendment.

It is indispensable that the indictment should aver that the murdered man died in the county in which the indictment was preferred.

A juror cannot be allowed to testify to facts that will avoid his verdict.

Any irregularity, or exposure to undue influence, of a jury, or misconduct of the officer in charge of them, will vitiate their verdict.

Error to Monroe circuit court.    ROGERS, J.

James Riggs was indicted in the circuit court of Monroe county for the murder of Joel E. Hunt, and at the March term, 1853, of said court, sentence of death was pronounced against him by the court, after conviction by the jury.

The following causes of error are assigned by the plaintiff in error for reversal of the judgment of the court below:

1st. Because the indictment does not allege that the deceased (Hunt) died in the county of Monroe, where the accused was indicted and tried.

2d. The jury, while sitting in the case, ate at a public table of a hotel with a crowd of guests, and the landlord and servants of the hotel were freely admitted into their room. A private room, apart from the one they occupied, was prepared for the jury, in which was put intoxicating drink, into which they went separately to drink. The officer in charge went to sleep at ten o'clock, and left the jury in the room with the door unlocked. The jury had cards, liquor, and a fiddle, all of which they used during the night. The next morning, one of the jurors, without the consent of the officer in charge of them, separated from the balance and paid a visit to his family.

Three other grounds of error were assigned, but the court gave no decision on them, and it is unnecessary to state them. The defendant prayed a writ of error to this court.

*W. F. Dowd* for plaintiff in error.

The time and place must be added to every material fact in the indictment. The death of the deceased in the county where the offense is charged to have been committed, is a material fact, without which the prisoner cannot be lawfully convicted. Arch. Crim. Pl., 34; ib., 381; Stoughton v. State, 13 S. & M., 225.

The jury ate at the public table with a crowd of guests. The landlord and servants of the Walton House were freely admitted into their room. A private room, apart from the one they occupied, was prepared for them, with intoxicating liquors, into which they went separately to drink. The officer in charge goes to sleep at ten o'clock, leaving the jury up in the room, and the door unlocked. Cards, liquor, and a fiddle had been previously prepared for them. The game and the midnight revel engaged

a large portion of their attention, while deliberating on a verdict involving the life of a fellow man and the destiny of an immortal soul.

One of the jurors on the next morning, without the knowledge of the officer, separated from his fellows and paid a visit to his family.

Every barrier and safeguard which the common law, founded in profound wisdom, and matured by the experience of ages, has thrown around the jury-box, to protect it from corruption and contamination, has, in the trial of this cause, been broken down.

If such practices are to receive the sanction of the courts, the trial by jury, hitherto so celebrated for its purity and impartiality, will become equally famous as a mere engine of cruelty and an instrument of murder, armed with irresistible power.

The case is much stronger than any of those to which I now refer the court. Commonwealth v. McCall, 1 Va. Cases, 271; Overbee v. Commonwealth, 1 Rob., 756; McLane v. State, 10 Yerg., 241; Roby v. Commonwealth, 12 Pick., 496; Hare's case, 4 How. Miss. R., 187; Bolles' case, 13 S. & M., 400; Morgan v. State, Opinion Book, 629, 630.

*D. C. Glenn*, attorney general.

A motion was made to arrest the judgment, because it was not alleged in the indictment that Hunt died in Monroe county. If this defect existed, it would be fatal. But it does not exist. The indictment avers as follows : " Of which said mortal wounds the said Joel Hunt did then and there" (that is, in 'Monroe county) "languish, and languishing did live for about the space of twenty hours, and did then die." There is no uncertainty or defect here. The languishing, living, and death are plainly connected and pointed to by the "then and there," which, by natural and proper meaning, refers to all of them. Ike v. State, 1 Cushm., 525; Johnson's case, Walker R., 392; 1 Leach, 529; Douglass, 212; 4 Co., 41, 43; Dyer, 69 a; 2 Lord Raym., 1467, 1468; State v. Cherry, 3 Murph., 7; 2 How., 661.

Smith, C. J. :

The plaintiff in error was tried and convicted of murder in

the circuit court of Monroe county. Upon the return of their verdict by the jury, the prisoner moved the court for a new trial and in arrest of judgment. These motions were overruled, and sentence of death was pronounced upon the prisoner, who has brought his case into this court upon the bills of exception filed by him during the progress of the trial in the court below. From the view we take of the case, it will be unnecessary to notice in detail the various exceptions taken to the judgment of the court.

The objections mainly relied on by the plaintiff in error, are based: 1. Upon the alleged invalidity of the indictment; and 2. Upon the misconduct of the jury during their retirement to consider of their verdict.

1. It is said that the indictment is defective and illegal because it does not allege with sufficient certainty the place at which the party charged to have been murdered died.

The facts and circumstances which constitute the offense charged must be stated with precision and certainty. And every material circumstance, in regard to time and place, must be averred with that degree of certainty which is sufficient·to exclude every other intendment.[1]  Arch. Crim. Plead., 34–381; Chit. Crim. Law, 280, 283. Let us apply this rule to the indictment under consideration.

The description of the act with which the prisoner is charged as a felony is contained in the following averment, to wit: " That the said James Riggs, with a certain knife which he then and there in his right hand had and held, the said Joel E. Hunt, in and upon the right shoulder, and in and upon the right side of the body, and in and upon the right side of the belly of him the said Joel E. Hunt, then and there feloniously, wilfully, and of his malice aforethought, did strike and thrust, giving to the said Joel E. Hunt, etc., the mortal wounds, etc., of which said mortal wounds the said Hunt did then and there languish, and languishing did live for the space of about twenty hours, and did then die."

---

[1] Wharton Am. Cr. Law, 285, *et seq.*; Wharton's Prec., 1061–2; People v. Taylor, 3 Denis, 91; Briggs v. People, 8 Barb., 547; State v. Philbrick, 1 Red., 401; Kit. v. State, 1 Humph., 167; 2 Hawk., c. 25, § 57; Bac. Abr. Indictment, G. 1; Cowp., 683.

Every valid charge for murder necessarily contains three distinct propositions: 1, That the person slain was murdered; 2, that the party charged perpetrated the deed; and 3, that the felony was committed within the county where the indictment was found.    In the indictment before us, it is seen that no averment of place is affixed to the time when the subject of the alleged murder is stated to have died.    After the reception of the wounds which caused his death, he "languishing did live for the space of about twenty hours, and then did die."    It is manifest that, tested by the rule above laid down, this averment is insufficient.    The fact that the murdered party did not die within the county of Monroe is not necessarily excluded, or rather it does not appear by direct averment and with certainty, that he died within that county.    This fact it was indispensable that the indictment should aver.[1]    For although the mortal wound may have been there inflicted, if the death, in fact, occurred in another county, by express statutory provision the circuit court of Monroe had no jurisdiction of the offense. Poindex. Code, 314.

2. On the hearing of the motion for a new trial, which was based in part upon the alleged misconduct of the jury, and that some of them, after they had been committed to the charge of an officer, separated from their fellows, several witnesses were examined, amongst whom two of the jury were permitted to depose to facts which tended to inculpate themselves and some of their associates.    This was improper, and in plain violation of the settled rule on the subject.    But, excluding their testimony, which was not objected to in the court below, enough

[1] Archbold Cr. Pr. and Pl., 892, notes.  At common law, the party committing a criminal offense, must be indicted in the county where the offense was committed. But in the case of homicide, if the wound was given in one county and death happened in another, it was said by some that the party was not indictable at all, because the offense was not complete in either county, and the jury could inquire of only what happened in their own county. 1 Hawk. P. C., 94; 1 East, 361.  The common opinion is that the prisoner may be indicted where the stroke was given, for that alone is the act of the party of which the death is but a consequence. Riley v. State, 9 Humph., 466.  By our statute, "Where the mortal stroke, or other cause of death occurs or is given or administered in one county, and the death occurs in another county, the offender may be tried in either county; and so, also, if the mortal stroke or cause of death occurs, or is given or administered in another state or country and death happens in this state, the offender shall be tried in the county where death happened." Rev. Code of 1857, 613, art. 146.  See Archbold Cr. Pr. and Pl., as to rule in different states, p. 892, note (1).

appears from the testimony of the other witnesses to require us, in conformity with the doctrine recognized in repeated decisions of this court, to set aside their verdict.

Irregularities on the part of juries empanelled and charged with the trial of felonies, and misconduct in the officers having them in charge, have become of such frequent occurrence that we deem it incumbent upon us to suggest respectfully to the learned judges who preside in our circuit courts, that the corrective which they hold in their hands should be promptly and rigidly applied. It is manifest that if these evils, which appear to be greatly on the increase, are not arrested, it must become in the end a vain effort to bring to just punishment any violation of the laws of the land.

Let the judgment be reversed, the indictment quashed, and the prisoner remanded to the circuit court of Monroe county, to await the future action of the court.